[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 9, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14714
No. 05-14715
Non-Argument Calendar

_____

D. C. Docket Nos. 05-00030-CR-CG & 05-00071-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TAWANNE LUCAS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(August 9, 2006)**

Before ANDERSON, DUBINA  and HULL, Circuit Judges.

PER CURIAM:

Tawanne Lucas appeals his 210-month sentence for possession with intent to

distribute crack cocaine, 21 U.S.C. § 841(a)(1), arguing that (1) the district court clearly erred in determining the drug quantity attributable to him, (2) the district court erred by failing to apply the beyond-a-reasonable-doubt standard of proof in resolving contested facts at sentencing, and (3) the district court clearly erred when it applied a two-level enhancement for possession of a firearm in connection with a drug offense pursuant to U.S.S.G. § 2D1.1(b)(1).[1]

We are not persuaded by Lucas's arguments, and we affirm the district court's sentence.

## I.

First, Lucas argues that the district court clearly erred in determining the drug quantity attributable to him by relying on the testimony of Antonio Law, who provided inconsistent testimony as to the number of times he sold cocaine to Lucas and the amount of cocaine he sold during each transaction. We review a district court's determination of drug quantity under § 2D1.1(c) for clear error. United States v. Ryan, 289 F.3d 1339, 1347 (11th Cir. 2002). "When a defendant challenges one of the factual bases of his sentence, as set forth in the PS[I], the Government has the burden of establishing the disputed fact by a preponderance of

---

[1] Two cases, No. 05-14714 and No. 05-14715 have been consolidated here. The issues addressed in the text were raised in No. 05-14714. No 05-17415 involved an appeal of a concurrent 120-month sentence for possession of a firearm by a convicted felon, 18 U.S.C § 922(g)(1). Lucas has not raised any arguments with respect to that sentence on appeal, thus abandoning same.

the evidence." United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995).

The standards for reviewing the application of the Guidelines before United States

v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), apply after

Booker as well. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005).

"A sentencing court under Booker still must calculate the Guidelines, and, such

consideration necessarily requires the sentencing court to calculate the Guidelines

sentencing range in the same manner as before Booker." Id. at 1178-79. We give

great deference to a district court's assessment of evidence and the credibility of

witnesses. United States v. Lee, 68 F.3d 1267, 1276 (11th Cir. 1995). Section

2D1.1(c)(2) provides that a defendant who is responsible for 50 kilograms but less

than 150 kilograms of powder cocaine or 500 grams but less than 1.5 kilograms of

crack cocaine shall have a base offense level of 36. U.S.S.G. § 2D1.1(c)(2).

Lucas argues that Law's testimony was not credible because Law was

inconsistent in calculating how much cocaine powder he had sold to Lucas. Law

first stated to a DEA agent (who also testified at the sentencing hearing) that he

was involved in about 100 transactions to Lucas (1 per week over the course of 2

years), he then impliedly testified that he sold Lucas cocaine over 200 times (2 to 3

transactions per week over 2 years), then again testified during the same

proceeding that he was only involved in 20 transactions. Law also provided

3

differing accounts as to the amount of cocaine sold during each transaction; the accounts varied from one to three ounces.

Lucas argues that the district court did not calculate the cocaine quantity cautiously, as required by the law of this Circuit. See United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998). However, based on Law's testimony, the most conservative estimate would be 20 ounces (20 transactions at 1 ounce per transaction).[2] Twenty ounces (567 grams) would exceed the 500 gram threshold. We cannot conclude that the district court clearly erred in finding that at least a half kilogram was involved. Accordingly, we hold that the district court did not clearly err in finding that Lucas's drug quantity was over 500 grams for sentencing purposes.

Alternatively, Lucas argues that the district court erred in attributing to him 500 grams of crack cocaine, when the witness Law testified that he sold Lucas powder cocaine. Law, however, testified that Lucas converted the powder cocaine into crack cocaine. Law claimed to have seen the crack cocaine on about 10 occasions. Law testified that he never saw Lucas sell powder cocaine and only knew Lucas to sell crack. Finally, Special Agent Todd Hixson testifed that a

---

[2] The evidence provided by Law was that each transaction was one to two ounces, or two to three ounces. In his testimony before the sentencing judge, Law clarified that he would sell an ounce at a time when supplies were short.

quantity of powder cocaine converts approximately to the same amount of crack cocaine. Therefore, the powder cocaine from Law would convert into at least 500 grams of crack cocaine. Accordingly, we hold that the district court did not err in attributing 500 grams of crack cocaine to Lucas.

## II.

Next, Lucas argues that the district court erred in resolving factual disputes at his sentencing hearing under the preponderance of the evidence standard of proof, instead of under a beyond a reasonable doubt standard of proof. The parties dispute whether Lucas properly objected to the standard of proof in the district court. We will not decide this issue because, even if Lucas properly objected, his claim fails.

When the district court applies the guideline range in an advisory manner, nothing in Booker prohibits district courts from making, under a preponderance of the evidence standard, additional factual findings that go beyond a defendant's admission. See United States v. Ndiaye, 434 F.3d 1270, 1300-01 (11th Cir. 2006); United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005);United States v. Rodriguez, 398 F.3d 1291, 1297 (11th Cir. 2005). As we "have explained, 'all nine [justices] agreed that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional.'" Chau, 426 F.3d at 1323 (quoting

5

Rodriguez, 398 F.3d at 1301 (11th Cir. 2005)).  Further,  "the district court's

factual findings for purposes of sentencing may be based on, among other things,

evidence heard during trial, undisputed statements in the PSI, or evidence

presented during the sentencing hearing." United States v. Polar, 369 F.3d 1248,

1255 (11th Cir. 2004).

We have continually recognized the district court's authority to resolve

factual disputes under the preponderance of the evidence standard of proof under

advisory guidelines.  Accordingly, Lucas's Booker argument is without merit.

**III.**

Lastly, Lucas argues that the district court clearly erred in applying a two-

level enhancement for possession of a firearm in connection with a drug offense

pursuant to U.S.S.G. § 2D1.1(b)(1).  We review for clear error the district court's

findings of fact when it enhances a defendant's sentence in cases involving

U.S.S.G. § 2D1.1(b)(1), and review the application of the sentencing guidelines de

novo.  United States v. Gallo, 195 F.3d 1278, 1280 (11th Cir. 1999).

Under the guidelines, a defendant should receive a two-level enhancement if

he possessed  a firearm.  U.S.S.G. § 2D1.1(b)(1).  The commentary to § 2D1.1

states that the adjustment should be applied if the firearm was present, unless it is

clearly improbable that the weapon was connected with the offense.  U.S.S.G.

§ 2D1.1(b)(1), comment. (n.3). The government has the burden of proving that "the firearm was present at the site of the charged conduct." United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995). Then the burden shifts to the defendant to demonstrate that "a connection between the firearm and the offense is clearly improbable." Id.

Police officers discovered firearms in Lucas's home where he was also arrested for drug possession. Qurinus Lucas, Lucas's brother who also lived in the home, testified that the firearms belonged to their grandfather, were locked in a closet in their grandfather's old room, they did not have ammunition for them, and there may have only been one pistol. However, the eight guns in question were actually found underneath a mattress next to where Lucas had crack cocaine on top of a dresser. There were also two handguns among the firearms, as well as ammunition. Given Qurinus's lack of knowledge concerning the type of guns, the presence of ammunition, and their location, the district court could properly find his testimony incredible and find that it was not clearly improbable that the firearms were connected to Lucas's drug offense. Accordingly, the district court did not err in applying the enhancement, and we affirm on this ground.

**AFFIRMED.**[3]

---

[3] Lucas's request for oral argument is denied.